STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-03-23

JEFFREY E. GREEN, *et al.*,

    Plaintiffs

v.

JAMES H. LAWRENCE,

    Defendant

**JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

NOV 5 2004

This matter comes before the court on the plaintiffs' motion for summary judgment on their complaint seeking declaratory judgment and a permanent injunction with regard to certain lots in the Camp Menatoma development in Readfield, Maine. The four lots in question are owned by the defendant. The defendant does not suggest that there are material facts in dispute. Rather, he takes the position that he is the party who should be entitled to judgment as a matter of law.

### Facts

In late 1979, the Menatoma Realty Corporation owned an 89-acre parcel of real property in Readfield on the shores of Lovejoy Pond. The property was a former summer camp for youngsters, which the corporation intended to subdivide into 18 lots. Defendant James Lawrence, president of the corporation, filed for the necessary approval from the Department of Environmental Protection and the Town Planning Board. The intent was to develop all 18 lots, but it was found that lots 8-11 did not have soil conditions suitable for construction of a wastewater septic system. As a result, the DEP required that lots 8-11 be limited to "wood lot use only." As a result, the initial plan was amended by adding on each of the four lots on the plan the notice "Lot_ Not

Suitable For Subsurface Sewerage Disposal" and adding conditions that include the following:

> 7.     No more than one single-family dwelling shall be maintained on lots 1, 2, 3, 4, 5, 6, 7, 12, 13, 14, 15, and 16. Lots 8, 9, 10, and 11 are restricted to use as wood lots only.

> 15.     The above restrictions apply to all purchasers of property in Camp Menatoma, their heirs, successors, and assigns.

(emphasis provided)  The Readfield Planning Board approved the subdivision plan with these restrictions, and the restrictions were subsequently incorporated into the deed for each parcel as it was sold.

Following the approval by both the DEP and the Planning Board, in August of 1980 the Menatoma Association – an owners organization to administer certain aspects of the subdivision – was founded.  The bylaws of the Association included the following language concerning the budget for the group:

> The general assessment shall be computed as follows:  The general budget shall be divided into 34 equal parts and each lot and/or building will be assessed $1/34^{th}$ of said budget with the exception of lot seventeen (17) which will be assessed $2/34^{th}$ of said budget.  In the event that any one of lots eight (8) through eleven (11) can lawfully be and is developed for seasonal or year round dwelling purposes, each lot shall bear its proportionate share and the fractional assessments for each lot will be adjusted thereafter accordingly.

In 1984, the corporation sold the remaining unsold lots, including 8-11, to James Lawrence.

Some 20 years passed before the next chapter in this tale.  In the interim, changes in the soil requirements for subsurface disposal systems took place such that it appeared that lots 8-11 might be able to qualify for residential development.  In early 2003, Mr. Lawrence unilaterally amended the restrictions to eliminate the "wood lots only" provision and filed applications with the DEP and the Planning Board seeking approval for development of these lots in light of the changes.  Both of these regulating

agencies approved the request. However, the present litigation challenging the sale of these lots for purposes other than as a wood lot was filed by a group of other property owners in the development and none of the lots have yet been sold.

## Discussion

The plaintiffs argue that the "wood lots only" language in the Camp Menatoma plan and deeds constitutes a restrictive covenant enforceable by the owners of property within the subdivision. Such restrictive covenants are to be interpreted so as to determine the intent of the grantor as expressed in the plain language of the contract. Here, the plaintiffs argue there is no ambiguity in the "wood lots only" language and it is not necessary to consider extrinsic evidence for purposes of interpretation of the contract. The defendant argues in response that the term "wood lot" is ambiguous and extrinsic evidence must be considered. The court agrees with the plaintiffs. The term "wood lot" is a common term describing the use of a piece of property for growing and harvesting trees; a commonly understood term, at least in Maine.

Having found no ambiguity in the restrictive covenant, there is no need to consider the extrinsic evidence offered by the defendant in the form of articles in the Menatoma Association bylaws and correspondence from DEP. However, if it were relevant, such extrinsic evidence is not all one-sided. For example, the plaintiffs could have pointed to 1980's advertising for the subdivision suggesting that deed restrictions would protect each owner from changes in the property of the subdivision.

The defendant also argues that it was not intended that individual property owners, such as the plaintiffs, would be able to enforce the deed restrictions pointing to paragraph 16 of the conditions which states:

> The failure to comply with said restrictions or to meet the obligations regarding membership in the Menatoma Association will result in court action, the cost of which, including reasonable attorney's fees, will be the

responsibility of the purchaser or association member of his heirs, successors, or assigns.

Somehow the defendant interprets this as meaning that the restrictions can only be enforced by the Association itself. The defendant is simply misreading the condition and the court concludes that these deed restrictions must be enforceable by other property owners to have any legal significance.

The defendant also argues that the purchasers knew of the Association bylaws and they should have been aware of the provision noted above concerning division of the budget. However, the court concludes that purchasers of the property had the right to depend upon the unambiguous restrictive covenants in their deeds when compared with an ambiguous and scarcely related provision in the bylaws of the property owners association.

Finally, the defendant argues that the court should apply the "relative hardship doctrine" which would lead to the voiding of a restrictive covenant if that restriction will harm the defendant without substantially benefiting the plaintiff's land. The defendant also suggests that the change in circumstance with new soil requirements should cause the court to terminate the covenant. Two facts lead the court to disagree. First, there is no hardship to the defendant except in the sense that he still is unable to reap additional profit from the sale of the four lots in question. The hardship created by the restrictive covenant occurred at the time that the plan was amended in 1980. At that time, apparently a business decision was made by the corporation that it would live with reduced profits of not being able to sell lots 8-11 for residential purpose for the greater benefit of being able to develop the remaining 14 lots. Presumably when Mr. Lawrence purchased these lots from the corporation, the purchase price reflected this restriction because. Second, since Mr. Lawrence was the president of the corporation,

any hardship could be said to have been his own making in light of the corporation decision to proceed with the reduced plan in 1980.

In count II of their complaint, the plaintiffs seek injunctive relief to prevent the defendant from marketing these four lots for anything other than wood lot use. According to representations made during oral argument, no sales had been made due to the pending litigation. The court anticipates that future sales efforts will be limited by this declaratory judgment and does not see the need for additional injunctive remedies at this time.

In light of the foregoing, the entry will be:

(1)     The plaintiffs' motion for summary judgment is GRANTED as to both counts.

(2)     The court DECLARES that the use of lots 8, 9, 10, and 11, as shown on the Camp Menatoma Subdivision Plan dated March 18, 1980, and recorded in the Kennebec County Registry of Deeds at Plan File 80106, are limited to wood lot use only as provided in the provisions of the Camp Menatoma restrictive covenants unless this restriction is removed by those property owners benefiting from this restriction.

Dated: October____, 2004

_____
S. Kirk Studstrup
Justice, Superior Court

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-RE-2003-00023

DOCKET RECORD

JEFFREY E GREEN   - PLAINTIFF
114 BEAUFORT AVE
NEEDHAM MA 02492
Attorney for: JEFFREY E GREEN


DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


Attorney for: JEFFREY E GREEN
MARY A DENISON   - RETAINED 08/25/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


BETH Z GREEN   - PLAINTIFF

Attorney for: BETH Z GREEN

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


PAMELA L CAHILL   - PLAINTIFF

Attorney for: PAMELA L CAHILL

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


BRADLEY W CAHILL   - PLAINTIFF

Attorney for: BRADLEY W CAHILL

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


EILEEN M REGAN   - PLAINTIFF

Attorney for: EILEEN M REGAN

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


FRANK H FERREL   - PLAINTIFF

Attorney for: FRANK H FERREL

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


RICHARD J DEMARCO   - PLAINTIFF

Attorney for: RICHARD J DEMARCO

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


JANICE A DEMARCO  - PLAINTIFF

Attorney for: JANICE A DEMARCO

DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


WARREN BOENKE  - PLAINTIFF

Attorney for: WARREN BOENKE
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


BARBARA BOENKE  - PLAINTIFF

Attorney for: BARBARA BOENKE
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


DOROTHY OHARE  - PLAINTIFF

Attorney for: DOROTHY OHARE
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


DAVID OFESEVIT  - PLAINTIFF

Attorney for: DAVID OFESEVIT
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


NANCY MAZONSON  - PLAINTIFF

Attorney for: NANCY MAZONSON
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330

MARTHA QUIRK  - PLAINTIFF

Attorney for: MARTHA QUIRK
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


ERIC WALERYSZAK  - PLAINTIFF

Attorney for: ERIC WALERYSZAK
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330


CAROL WALERYSZAK  - PLAINTIFF

Attorney for: CAROL WALERYSZAK
CLIFFORD GOODALL  - RETAINED 10/08/2003
DYER GOODALL AND FEDERLE LLC
61 WINTHROP ST
AUGUSTA ME 04330



VS
JAMES H LAWRENCE  - DEFENDANT
OLD KENTS HILL ROAD
READFIELD ME 04355
Attorney for: JAMES H LAWRENCE
ROY PIERCE  - RETAINED
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

Attorney for: JAMES H LAWRENCE
RONALD COLBY  - WITHDRAWN 03/02/2004
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

LAURA BANTLY  - PARTIES IN INTEREST
TONY BANTLY  - PARTIES IN INTEREST
MICHAEL MCDONOUGH  - PARTIES IN INTEREST
JOANNE MCDONOUGH  - PARTIES IN INTEREST
DONNA MCGIBNEY  - PARTIES IN INTEREST
JEFF SCOTT  - PARTIES IN INTEREST
JEFF SCOTT  - PARTIES IN INTEREST
HILDA SCOTT  - PARTIES IN INTEREST
MIKE GRIFFIN  - PARTIES IN INTEREST
BARBARA GRIFFIN  - PARTIES IN INTEREST
BEN HIRSH  - PARTIES IN INTEREST

LINDA HIRSH   - PARTIES IN INTEREST
JOHN BURDEN   - PARTIES IN INTEREST
ANNE BURDEN   - PARTIES IN INTEREST
JANE HARRISON   - PARTIES IN INTEREST
DAVID ELS   - PARTIES IN INTEREST
SUSAN ELS   - PARTIES IN INTEREST
BRUCE KIDMAN   - PARTIES IN INTEREST
JOAN KIDMAN   - PARTIES IN INTEREST
STEVE WOLKOFF   - PARTIES IN INTEREST
ADELE WOLKOFF   - PARTIES IN INTEREST
DAVID CLAPP   - PARTIES IN INTEREST
CAROL CLAPP   - PARTIES IN INTEREST
ALFRED JACOBS   - PARTIES IN INTEREST
SALLY JACOBS   - PARTIES IN INTEREST
ARNOLD STURTEVANT   - PARTIES IN INTEREST
LEDA STURTEVANT   - PARTIES IN INTEREST
PHIL JACKSON   - PARTIES IN INTEREST
FRENK H FERREL   - PARTIES IN INTEREST
LINDSEY WALDO   - PARTIES IN INTEREST
MARK EDELSTEIN   - PARTIES IN INTEREST
SUSAN BALDI   - PARTIES IN INTEREST
MENATOMA ASSOCIATION C/O HOWARD LAKE - PARTIES IN INTEREST

Filing Document: COMPLAINT                     Minor Case Type: EQUITABLE REMEDIES
Filing Date: 08/25/2003

## Docket Events:

08/25/2003 FILING DOCUMENT - COMPLAINT FILED ON 08/25/2003

08/25/2003 Party(s):  JEFFREY E GREEN
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  BETH Z GREEN
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  PAMELA L CAHILL
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  BRADLEY W CAHILL
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  EILEEN M REGAN
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  FRANK H FERREL
           ATTORNEY - RETAINED ENTERED ON 08/25/2003
           Plaintiff's Attorney: CLIFFORD GOODALL

08/25/2003 Party(s):  RICHARD J DEMARCO